# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

MIGUEL OMAR MALDONADO,

     Petitioner,

v.                                      Case No. 8:15-cv-430-T-27JSS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____/

## ORDER

     Miguel Omar Maldonado, a Florida inmate, filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his Hillsborough County convictions. (Dkt. 1). Respondent opposes the petition. (Dkt. 13). Petitioner filed a reply. (Dkt. 24). Upon consideration, the petition is DENIED.

## PROCEDURAL HISTORY

     Petitioner was convicted after a jury trial of first degree felony murder with a firearm; three counts of robbery with a firearm; and two counts of kidnapping with a firearm. (Dkt. 15, Ex. 2, Vol. IV, pp. 657-58). He was sentenced him to life in prison. (Dkt. 15, Ex. 3). The state appellate court affirmed, *per curiam*. (Dkt. 15, Ex. 6). Petitioner's motions for postconviction relief under Florida Rule of Criminal Procedure 3.850 were denied. (Dkt. 15, Exs. 8-11; Dkt. 31, Ex. 20). The state appellate court affirmed, *per curiam*. (Dkt. 15, Ex. 15).

## STANDARD OF REVIEW

     Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief

can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).[1]  A petitioner must demonstrate that the state court's adjudication of his federal claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(1)-(2).

## DISCUSSION

Ground One: "Trial Court Reversibly Erred in Denying Petitioner's Motion To Suppress Regarding Statements He Made To Law Enforcement."

Petitioner asked to speak to Detective Morgan after his arrest and gave a recorded interview on April 4, 2006.  Detective Sepulveda translated, since Petitioner spoke Spanish.  Petitioner was detained at a county jail, and complained to the detectives about the conditions of his confinement. He argues that his statements were involuntary because they were induced by the detectives' promises to secure better conditions for him.  He alleges that the state court erred in denying his motion to suppress, and his claim is liberally construed as raising a federal due process violation.

After an evidentiary hearing, the state court found:

The testimony at the suppression hearing reflected Defendant Maldonado was interviewed on March 30, 2006 with an interpreter present and on April [4], 2006 when the Defendant's sister informed Detective Morgan that the Defendant wanted to speak to him.  Detective Sepulveda, a Spanish speaking officer conducted this interview which was recorded.  The detective admits the Defendant complained about the conditions in the jail specifically that he couldn't bathe and the jail personnel having [sic] difficulty understanding him.

The transcript reflects the Defendant asking Detective Sepulveda if he can be moved to another cell.  The detective responds they can check into that but that is something

---

[1] The AEDPA applies. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998).

the jail controls. The defendant also complains jail staff doesn't understand him and the detective respond [sic] they will talk to the jail supervisor.

The incident occurred on March [1]8, 2006. The Defendant tells the detective in his taped interview he was high on cocaine and marijuana when the incident occurred. The interview took place on April 4, 2006.

There is no evidence to suggest the detective made any promise to the Defendant. The Defendant complained about his jail conditions and the detective replied he would check with a jail supervisor. No promises were made to induce the Defendant's statements. The fact that the Defendant stated he was high on drugs when the incident occurred on March 18, 2006 has no bearing on the voluntariness of his confession April 4, 2006 [sic]. The Defendant's Motion alleging his confession was not voluntary is denied.

(Dkt. 30, Ex. 17, pp. 104-05).

"[A] defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession." *Jackson v. Denno*, 378 U.S. 368, 376 (1964). In determining the admissibility of a confession, a court considers whether police complied with *Miranda v. Arizona*, 384 U.S. 436 (1966), and whether the confession was voluntary. *United States v. Jones*, 32 F.3d 1512, 1516 (11th Cir. 1994).

Petitioner does not challenge the detectives' compliance with *Miranda*, but contends that his confession was involuntary because it was induced by the detectives' promises. Voluntariness "must be examined in light of the totality of the circumstances." *Hubbard v. Haley*, 317 F.3d 1245, 1252 (11th Cir. 2003) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). In assessing the totality of the circumstances, it must be determined whether the statement "was the product of 'an essentially free and unconstrained choice.'" *Id.* (quoting *United States v. Garcia*, 890 F.2d 355, 360 (11th Cir. 1989). "[P]romises or inducements by police" are one factor to be considered. *Id.* Further, "[g]overnment coercion is a necessary predicate to a finding of involuntariness under the Fifth

Amendment." *United States v. Thompson*, 422 F.3d 1285, 1296 (11th Cir. 2005).

Petitioner relies on two portions of the interview in support of his claim. The first states:

SEPULVEDA: Go ahead and fill in the time, it's 0935. Okay, let the record reflect that Mr. Maldonado has signed his uh, Consent to be Interviewed for[m] in Spanish. He indicated to me in Spanish that he understood all the points of his uh, Miranda warning.

MALDONADO: (INAUDIBLE). . .

MORGAN: Alright, I got . . .

MALDONADO: Ask him if [he] can remove me from the cell, please.

SEPULVEDA: If you can take off what?

MALDONADO: He can't take me out of the cell and put me somewhere else?

SEPULVEDA: He's asking if you could take him out of the cell that he's in and put him in another cell.

MALDONADO: (INAUDIBLE) . . .

MORGAN: I, I, yeah, explain to him that right now, based on what I know, it's because, he's in there because of his charges . . .

SEPULVEDA: Okay . . .

MORGAN: . . . because of the severity of his charges to avoid anyone from hurting him.

SEPULVEDA: Okay, the reason that you[']r[e] in the cell that you are now is because of the charges that you have, to protect you. You understand, that is the reason that you are there.

MALDONADO: To protect me . . .

SEPULVEDA: To protect you and because the charges you have are very serious. Okay, you understand that, that's the reason that you are in that particular cell.

MALDONADO: For how long?

| | |
|---|---|
| SEPULVEDA: | How much longer? |
| MORGAN: | I can, well, I can check on it, but that's something that has to be . . . |
| SEPULVEDA: | He can check with the superiors who work here, okay, but for now, that is where you are going to live in that cell. You understand? |
| MALDONADO: | For a long time? |
| SEPULVEDA: | No, I don't know. He doesn't know. |
| MORGAN: | That's something the jail controls . . . |
| SEPULVEDA: | We don't have any control over . . . |
| MALDONADO: | I see . . . |
| SEPULVEDA: | . . . of that, is the supervisors that work here in this place, in this jail . . . |
| MALDONADO: | . . . I'm going crazy . . . |
| SEPULVEDA: | Eh? |
| MALDONADO: | I'm going crazy in there, they don't understand me . . . |
| SEPULVEDA: | No, okay . . . he's saying that he's going crazy in there because nobody understands him . . . |
| MORGAN: | Oh, I see . . . |
| MALDONADO: | They don't . . . they don't, I don't know how to explain . . . if I tell them I want water, there's the water that (INAUDIBLE) . . . |
| SEPULVEDA: | Mmhmm . . . |
| MALDONADO: | The food . . . |
| SEPULVEDA: | He's complaining that, you know, when he's thirsty . . . |

| MALDONADO: | They won't let me take a bath . . . |
|---|---|
| SEPULVEDA: | . . . you know, food, he hasn't, he hasn't had a chance to take a bath and nobody seems to understand that he's trying to ask for them. We are going to take [sic] with the supervisors of this jail when we finish. |
| MORGAN: | That, that portion of that I can address . . . |
| SEPULVEDA: | Okay . . . |
| MORGAN: | . . . and I can talk to them in lockdown . . . |
| SEPULVEDA: | But that's what I just told him . . . |
| MORGAN: | . . . and explain to them . . . |
| SEPULVEDA: | Okay, we're going to talk with the supervisors to help you with that. |
| MORGAN: | Yeah, I mean he has the right to take a shower and get a drink or anything like that . . . |
| SEPULVEDA: | Now the reason that we're here, okay, in this office is because your sister talked with us and that you wanted to tell us, or to him, the both of us, what happened . . . this is what we want to talk about . . . |
| MALDONADO: | Yeah . . . |
| SEPULVEDA: | . . . okay and if you have something to say to us about that case, we are here to listen to what you have to say about that case. But speak slowly. |
| MALDONADO: | (INAUDIBLE) . . . ask me what you want to ask me. (INAUDIBLE) I was there right? |

(Dkt. 30, Ex. 17, pp. 55-59).

Petitioner then talked to the detectives about the case before the following exchange:

| SEPULVEDA: | [Detective Morgan] says that it's so very important that you remember, remember what happened there. We understand |
|---|---|

that you are not sure . . .

MALDONADO: Of course, of course . ..

SEPULVEDA: . . . that your mind was full of drugs, we understand that . . .

MALDONADO: . . . I can't think in here, if I were somewhere quiet and calm, I could think and I'm telling you the truth . . .

SEPULVEDA: Mmhmm . . .

MALDONADO: . . . you know what I'm saying . . .

SEPULVEDA: Mmhmm . . .

MALDONADO: . . . I'm telling you, I'm going to tell you all the truth and I want you to help me get to that part . . . if you give me . . . if I can more or less . . .

SEPULVEDA: Mmhmm . . . we've already told you that we're going to talk to the supervisors here to, so you can be more comfortable . . .

MALDONADO: . . . aha, so I can more or less . . .

SEPULVEDA: . . . to take a shower, give you more food . . .

MALDONADO: . . . relax and I can speak calmly . . . you know what I'm saying . . .

SEPULVEDA: Mmhmm . . . yes . . .

MALDONADO: Relax and speak calmly . . .

SEPULVEDA: Okay, there's no problem with that . . .

MALDONADO: That's fine, that's fine . . .

SEPULVEDA: Tell me . . .

MALDONADO: I'd remember, really . . . swear to my mother . . . and I don't swear to my mother. . .

| SEPULVEDA: | Okay . . . |
|---|---|
| MALDONADO: | I don't remember. I want to relax, I haven't even eaten, since I got here, I haven't eaten anything . . . you know what I'm saying . . |
| SEPULVEDA: | Mmhmm . . . mhm . . . |
| MALDONADO: | I came here weighing 165 pounds . . . |
| SEPULVEDA: | Mmhmm . . . |
| MALDONADO: | They weighed me, I'm at 139 . . . truly . . . give me a chance and I'll speak with y'all . . . whenever you want. |
| SEPULVEDA: | Mmhmm . . . |
| MALDONADO: | . . . after I eat and take a bath, I'll speak with y'all. All that I'm going to speak about, the reality, but let me . . . |
| SEPULVEDA: | Okay, so there's more that you want to say, but you need a bath, you need food . . . |
| MALDONADO: | I don't have anything else to say, since you are the detectives, you all know more or less how things are . . . |
| SEPULVEDA: | Mmhmm . . . |
| MALDONADO: | . . . whatever y'all start asking, I'll start answering . . . |

(*Id.*, pp. 95-97).

Detectives then asked several more questions and Petitioner stated that he did not remember but that it was possible he fought with the victim and the gun went off. (*Id.*, pp. 97-98).

The record demonstrates that the detectives met with Petitioner at his request, and their offer to raise his concerns with jail personnel was made in direct response to his complaints. Further, the transcript demonstrates that the detectives did not coerce him into speaking and did not make any promises to induce his statements. The transcript therefore supports the state court's conclusion that

his statements were not rendered involuntary by any promises from the detectives. *See, e.g., Arvelo v. Sec'y, Fla. Dep't of Corr.*, 687 Fed. App'x 901, 904-05 (11th Cir. 2017) (confession was voluntary even though detective made offers of help regarding suspect's mental health, when the offers were not made in exchange for the statement).

Petitioner also relies on a conversation with Detective Sepulveda prior to taping. During the evidentiary hearing, Detective Sepulveda testified that he had a brief discussion with Petitioner before the tape started. (Dkt. 31, Ex. 19, p. 293). He referred to this period as a "getting acquainted time" and testified that he wanted to make sure he understood Petitioner's dialect. (*Id.*). He denied making any promises prior to the taped interview. (*Id.*, p. 294).

Petitioner testified that Detective Sepulveda said he would help him if he said the words that he wanted to hear. (*Id.*, p. 299). When asked what "words" he meant, he stated, "Supposedly there was a person at the place where the incident took place that the police said that saw me there and that knew me." (*Id.*, p. 300). He testified that he agreed to give a statement because of the promise, or the "promise of a promise," that Detective Sepulveda made. (*Id.*).

The state court implicitly found Petitioner's testimony not to be credible when it found that "[t]here is no evidence to suggest the detective made any promise to the Defendant" and that "[n]o promises were made to induce the Defendant's statements." This credibility determination is a factual finding that is presumed correct. *See Rice v. Collins*, 546 U.S. 333, 341-42 (2006) ("Reasonable minds reviewing the record might disagree about the [witness's] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination."); *Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over [the petitioner's]."); *Devier*

*v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are . . . entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)."). Petitioner has not rebutted the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) ("The applicant shall have the burden of rebutting the presumption of correctness [of a state court's factual finding] by clear and convincing evidence.").

Accordingly, he has not shown that the state court's denial of his claim was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts. He is therefore not entitled to relief on Ground One.

### Ineffective Assistance Of Counsel

Petitioner's remaining claims allege ineffective assistance of trial counsel. To establish ineffective assistance, he must show that counsel's performance was deficient in that it "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). He must also demonstrate that he was prejudiced as a result of counsel's performance by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Federal habeas review of an ineffective assistance claim is "doubly" deferential to counsel's performance and the state court's decision. *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

Ground Five: "Petitioner was deprived of his 6th and 14th amendment of the United States Constitution based on trial counsel failure to file a motion to suppress the defendant's post-Miranda statements because there was not a properly sworn interpreter present during interview."

As discussed, Detective Sepulveda interpreted the interview of Petitioner by Detective

Morgan on April 4, 2006. Petitioner asserts that trial counsel was ineffective in failing to argue that his statements should be suppressed because Detective Sepulveda was not a properly sworn interpreter. He further argues that counsel was ineffective in stipulating to the accuracy of the translation during trial. The state court denied this claim:

> Defendant alleges counsel was ineffective for failing to move to suppress his post-*Miranda* statements because there was not a properly sworn interpreter present during the interview. Defendant alleges Detective Supulveda[2] was not qualified to interpret because he was part of the investigation team.
>
> Defendant also argues counsel was ineffective for stipulating that the translation was accurate without discussing it with Defendant. Defendant asserts that because he and the interviewing detective were of different nationalities, there was a misunderstanding as to the meaning of his statements. Specifically, Defendant asserts that certain statements he made would appear to be admissions to Detective Supulveda, who is from Puerto Rico, but to Defendant, who is from the Dominican Republic, his statements were only means to obtain something he wanted. Defendant argues that if there had been an interpreter from the Dominican Republic present during the interview, he or she would have clarified his statements.
>
> [ ] [I]t is not improper for an officer to translate during an investigation interview. It does not appear that Defendant is alleging there were notable inaccuracies in the translation, only that his statements could be interpreted in different ways. Therefore, the Court finds that counsel was not ineffective for stipulating that the translation was accurate, and ground four is denied. The Court notes that Defendant testified at trial that he made all those statements to Detective Supulveda because he "had problems psychologically and mentally" and he was just trying to get out of there.

(Dkt. 15, Ex. 10, pp. 1-2) (court's record citation omitted).

Petitioner cites no authority providing that a law enforcement officer cannot interpret during an interview. And, as the state court noted, while he argues that his statements could have been misinterpreted, he has not clearly identified any specific statements that were translated inaccurately. (Dkt. 15, Ex. 9, pp. 5-6). Accordingly, the record supports the state court's conclusion that counsel

---

[2] The record contains different spellings of the Detective's name.

was not ineffective in stipulating to the translation's accuracy or in failing to move to suppress the statement on the basis of Detective Sepulveda's role as an interpreter. Since he has not shown that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claim, he is not entitled to relief on Ground Five.

Ground Thirteen: "Petitioner was deprived of his 6th and 14th amendment of the United States Constitution based on trial counsel failure to object to the prosecutor instructed two Spanish-speaking jurors to rely on the English translation when considering the evidence at trial."

During jury selection, the prosecutor informed prospective jurors who spoke Spanish that they would be required to rely on the interpreters' translations during the trial. (Dkt. 31, Ex. 21, p. 47). Petitioner claims that trial counsel was ineffective in failing to object. He argued in his postconviction motion that "the prosecutor took away the jury's free will to decide what they'll use or rely on as evidence in order to fully and unanimously reach a verdict." (Dkt. 31, Ex. 20, p. 20). The state court denied his claim:

> [T]he Defendant alleges counsel was ineffective for failing to object when the prosecutor instructed two Spanish-speaking jurors to rely on the English translation when considering evidence at trial. During voir dire, the prosecutor stated that the Spanish-speaking jurors would be required to rely on the English translation when considering the evidence, even if they understood Spanish. Florida Standard Jury Instruction 2.8 provides that evidence the jury is to consider is only that provided through official court translators, and even if a juror understands the language spoken, that juror must accept the English translation. The Court finds counsel was not ineffective for failing to object to the prosecutor's statements. Therefore, he is not entitled to relief on this claim.

(Dkt. 15, Ex. 8, pp. 7-8) (court's record citation omitted).

As the state court noted, Florida's standard jury instructions provide that jurors must accept the official English translation of a witness's testimony or of a tape recording, and disregard any different meaning. Fla. Std. Jury Inst. (Crim.) 2.9, 2.10. Accordingly, there is support for the state

court's conclusion that "counsel was not ineffective for failing to object to the prosecutor's

statements" because the statements were consistent with Florida's standard instructions for jurors.

And Petitioner has not cited any authority to support his contention that a juror who spoke Spanish

would have been entitled to disregard the translation and, therefore, potentially receive a different

version of the evidence than the rest of the jury. He accordingly does not show that the state court

unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim, and is

therefore not entitled to relief on Ground Twelve.

Ground Two: "Petitioner was deprived of his 6th and 14th amendment of the United States
Constitution based on trial counsel failure to present a voluntary intoxication defense."

Ground Three: "Petitioner was deprived of his 6th and 14th amendment of the United States
Constitution based on trial counsel failure to call an expert witness to testify regarding the effect of
intoxicants so that a defense of voluntary intoxication could be properly asserted."

Ground Four: "[T]rial counsel failure to request a special jury instruction on voluntary intoxication."

Petitioner contends that trial counsel was ineffective in failing to present a voluntary

intoxication defense, and in failing to call an expert witness and request a jury instruction in support.

The state court denied these claims. It found that counsel was not ineffective because, under

§ 775.051, Fla. Stat., voluntary intoxication is not a defense to any offense proscribed by law. (Dkt.

15, Ex. 8, p. 3). Deference must be given to the state court's conclusion as to Florida law. *See Will*

*v. Sec'y, Dep't of Corr.*, 278 Fed. App'x 902, 908 (11th Cir. 2008) ("Although an ineffective-

assistance-of-counsel claim is a *federal* constitutional claim, which we consider in light of the clearly

established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly

a question of *state* law, . . . we must defer to the state's construction of its own law.'") (quoting

*Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)). Counsel is not ineffective in failing

to pursue a matter that is without merit. *See Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) ("Counsel was not ineffective for failing to raise these issues because they clearly lack merit."). Accordingly, Petitioner has not established that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claims, and is therefore not entitled to relief on Grounds Two, Three, and Four.

Ground Six: "Petitioner was deprived of his 6th and 14th amendment of the United States Constitution based on trial counsel failure to request a jury instruction on premeditated murder."

The victim, Dennis Villalobos, was killed in a "house of prostitution" known as Club 21. The indictment charged Petitioner with the premeditated killing of Villalobos. (Dkt. 15, Ex. 1, p. 16). But at trial, the State pursued a felony murder theory, arguing that Petitioner, Ramon Luna, and Cesar Seferino planned to rob Club 21 and that the victim was killed during the course of the robbery and resulting kidnappings. (Dkt. 15, Ex. 2, Vol. III, pp. 566-67).[3]

Petitioner contends that trial counsel was ineffective in not requesting a jury instruction on premeditated murder. He claims that, had this instruction been given, he would have been acquitted because the State failed to present evidence of his premeditation. The state court denied this claim:

> [T]he Defendant alleges counsel was ineffective for failing to request a jury instruction on premeditated murder. However, the Defendant was accused of first degree felony murder, not first degree premeditated murder. To the extent the Defendant argues he was charged by indictment with premeditated murder, rather than felony murder, the Court finds the State may prosecute a charge under the theory of felony murder when the indictment charges premeditated murder. *Knight v. State*, 338 So.2d 201, 204 (Fla. 1976) (quoting *Larry v. State*, 104 So. 2d 352 ([Fla.] 1958)). As such, the Defendant has failed to demonstrate counsel performed deficiently, and he is not entitled to relief on this claim.

---

[3] The State contended that the perpetrators committed kidnapping when they "took the[ ] victims after [the robbery] was committed and while [the robbery] was being committed and bound their hands and left them there with their hands bound with duct tape." (Dkt. 15, Ex. 2, Vol. III, p. 587).

(Dkt. 15, Ex. 8, pp. 4-5) (court's record citation omitted).

Petitioner does not show that counsel had any basis to request a premeditation instruction, or that the request would have been granted, since premeditation was not an issue at trial. Deference must be given to the state court's determination that it was proper for the State to pursue an alternative theory of guilt, despite the language of the indictment. *See Will*, 278 Fed. App'x at 908. He therefore fails to demonstrate that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim, and is not entitled to relief on Ground Six.

Ground Seven: "Petitioner was deprived of his 6th and 14th amendment of the United States Constitution based on trial counsel failure to object to jury instructions that alleviated the State's burden of proof by interlocking all the charges in the indictment."

Petitioner claims that trial counsel should have objected because the "interlocking" nature of the felony murder instruction relieved the State of its burden of proof. He appears to argue that this instruction allowed his conviction for felony murder based solely on evidence showing he was guilty of robbery or kidnapping. The state court denied this claim:

> [T]he Defendant alleges counsel was ineffective for failing to object to jury instructions that alleviated the State's burden of proof by interlocking all the charges in the indictment. The Defendant argues the State [sic] only had to find him guilty of one count of robbery to find him guilty of felony murder. Section 782.04 of the Florida Statutes provides that the unlawful killing of a person constitutes first degree murder if it is committed by a person engaged in the perpetration of, or the attempt to perpetrate, a specified felony, including robbery and kidnapping. § 782.04(1)(a)(2), Fla. Stat. (2006). The jury found the Defendant guilty of three counts of robbery, two counts of kidnapping, as well as one count of first degree felony murder. The Court finds the jury instructions were proper. Therefore, the Defendant is not entitled to relief on this claim.

(Dkt. 15, Ex. 8, p. 5) (court's record citations omitted).

The jury was instructed:

To prove the charged crime of first degree felony murder the State must prove the

following beyond a reasonable doubt:

> Number one, Dennis Villalobos is dead. And two, his death occurred as a consequence of and while Miguel Maldonado was engaged in the commission of a robbery or a kidnap. And three, Miguel Maldonado killed Dennis Villalobos or a person other than Miguel Maldonado killed him, but both Miguel Maldonado and the other person who killed him were principals in the commission of the robbery or the kidnapping.

(Dkt. 15, Ex. 2, Vol. III, p. 619).

Petitioner has not demonstrated any defect in the felony murder instruction. No part of the instruction suggested that the jury could find him guilty of murder based simply on a finding that he committed either robbery or kidnapping. The instruction was clear that the jury also was required to find either (1) that he killed the victim or (2) that the victim was killed by another person, and that both he and the other person were principals in the robbery or kidnapping. Accordingly, he does not establish that counsel was deficient for failing to object. The state court's rejection of his claim did not involve an unreasonable application of *Strickland* or an unreasonable determination of the facts, and he therefore is not entitled to relief on Ground Seven.

Ground Eight: "Petitioner was deprived of his 6th and 14th amendment of the United States Constitution based on trial counsel failure to object to the use of perjured testimony at trial by the State against the de [sic]."

Petitioner alleges that counsel was ineffective in failing to object to witness Oriana Gonzalez's testimony because she gave a prior false statement. The state court denied this claim:

> [T]he Defendant alleges counsel was ineffective for failing to object to the State's introduction of perjured testimony. The Defendant argues witness Oriana Gonzalez admitted to lying previously regarding the events that happened on the day of the offense, and therefore, her testimony is unreliable. On cross examination, defense counsel confronted Ms. Gonzalez regarding prior statements which she had admitted were false. Ms. Gonzalez testified that she had previously lied to detectives because she was afraid to tell them she was working in a prostitution house. The Court finds counsel properly impeached Ms. Gonzalez. Therefore, the Defendant has failed to

demonstrate counsel performed deficiently, and he is not entitled to relief on this claim.

(Dkt. 15, Ex. 8, p. 5) (court's record citations omitted).

As the state court noted, Gonzalez admitted that she lied to police. She conceded on cross examination that she initially failed to mention that she was in her room with a man at the time because she was worried about getting in trouble for prostitution. (Dkt. 15, Ex. 2, Vol. I, pp. 260-61). Petitioner cites no authority providing that her admission to making a false statement prohibited her from testifying at trial, or that counsel should have objected to her testimony. And, as the state court noted, counsel addressed the false statement on cross examination. (*Id.*, pp. 255-56, 260-61). He fails to show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. Therefore, he is not entitled to relief on Ground Eight.

Ground Nine: "Petitioner was deprived of his 6th and 14th amendment of the United States Constitution where defense counsel fell asleep on numerous occasions during trial."

Petitioner contends that trial counsel was ineffective because he fell asleep during testimony of State witnesses and therefore could not make objections. The state court denied his claim:

> Defendant alleges counsel was ineffective for falling asleep on numerous occasions during trial. Defendant argues he was left without any meaningful representation during those periods. First, Defendant asserts counsel failed to object when witness Oriana Gonzalez testified that she heard the victim choking on his own blood. After considering the testimony, the Court finds counsel was not ineffective for failing to object to this testimony. Ms. Gonzalez testified that she heard the victim gurgling and choking on his own blood, and she saw the victim's body when she ran out of the house. Further, Dr. Lee testified that the gurgling sound is consistent with the Defendant's [sic] injuries to his neck and airway.
>
> Next, Defendant asserts that while counsel was sleeping, he failed to object to testimony from Dr. Jacqueline Lee that the victim's gunshot wound was not self-inflicted and was consistent with being caused by a .45 caliber bullet. However, the Court finds Dr. Lee's opinion was admissible, and counsel was not ineffective for failing to object. Defendant further alleges counsel was ineffective for failing to

object to the repetitive testimony and leading questions by the State on page 295 of the trial transcript. After reviewing the record, the Court finds counsel was not ineffective for failing to object to the testimony and line of questioning.

Defendant also contends that while sleeping counsel failed to object to all testimony regarding the crime scene because the scene was tainted from paramedics moving the body. Defendant asserts that evidence could have been taken. However, Defendant's argument that the crime scene could have been prejudicially tainted is purely speculative. As such, Defendant is not entitled to relief on this claim.

(Dkt. 15, Ex. 10, pp. 2-3) (court's footnote and record citations omitted).

Petitioner contends that because counsel was sleeping, he failed to object to Oriana Gonzalez's testimony that while she was bound and lying on the floor in the living room, she heard the victim in the kitchen gurgling or choking on his own blood. (Dkt. 15, Ex. 2, Vol. I, pp. 231-32). But he has not presented any evidence that counsel was asleep at any time during Gonzalez's testimony. To the contrary, the record demonstrates that counsel was alert to items of evidence that the State introduced at different points, announcing that he had no objection. (*Id.*, pp. 236-40, 243, 247). He responded when the court told him he could move if necessary when Gonzalez stepped down to use a diagram. (*Id.*, p. 243). He was also prepared to start cross examination when the prosecution finished its questioning, and on cross examination, he referred to testimony Gonzalez had just given. (*Id.*, pp. 249-50). Petitioner fails to show that the state court unreasonably determined that counsel was not ineffective. The state court's denial is supported by the record.

Nor has Petitioner presented any basis on which counsel should have objected. He claims that Gonzalez must have been lying because she did not see the victim until she ran out of the house. But Gonzalez testified that she could hear the victim but could not see him when he made choking noises. (*Id.*, p. 232). Accordingly, there is no indication that her testimony was based on anything but her personal knowledge. The record therefore supports the state court's conclusion that counsel

was not ineffective in failing to object to this testimony.

Petitioner next claims that counsel failed to object to portions of Dr. Lee's testimony because he was sleeping. He first cites her testimony that she determined the victim's cause of death to be homicide, meaning the fatal wound was not self-inflicted. Again, the record supports the state court's conclusion that counsel was not ineffective. Petitioner has not shown that counsel was asleep at any point during Dr. Lee's testimony. He stipulated to her qualifications as an expert in the field of forensic pathology and stated that he had no objection to the introduction of photographs. (*Id.*, pp. 282, 287-88). And, the testimony Petitioner relies on comprised the last two answers that she gave on direct examination, but counsel was ready to conduct cross examination immediately thereafter. (*Id.*, p. 300). And in cross examining her, he made references to her direct testimony. (*Id.*, pp. 300-01).

Nor has Petitioner presented any basis on which counsel could have objected. He appears to argue that her testimony was not reliable because other witnesses saw more than one firearm and heard more than one shot, meaning that the victim's injury might have been caused by any number of gunshots. (Dkt. 11, Ex. 9, p. 8). However, this allegation is speculative, and the state court found that her opinion testimony was admissible. As discussed, admissibility of testimony under Florida law is a state law issue to which deference is owed. *See Will*, 278 Fed. App'x at 908. And, the record supports the state court's conclusion that counsel was not ineffective in failing to object to the prosecutor's questions about the effects of the gunshot on page 295 of the trial transcript because Petitioner has not demonstrated that these questions were repetitive or leading. (Dkt. 15, Ex. 2, Vol. I, p. 295).

To the extent Petitioner refers to Dr. Lee's testimony that the victim's wound was consistent

with having been caused by a .45 caliber bullet, his claim that counsel was asleep is contrary to the claim raised in Ground Ten, *supra*, in which he claimed counsel failed to object, but did not allege that counsel was sleeping. As noted, he has not shown that counsel was asleep at any time during the trial. And for the same reasons discussed in Ground Ten, he has not established that counsel was ineffective in failing objecting to this testimony.

Petitioner next contends that counsel was ineffective because he was sleeping, which prevented him from objecting to "all testimony regarding the crime scene," which he argues might have been contaminated. In support of his allegation of potential contamination, he cited portions of the record showing that the victim's body was moved because paramedics attempted a medical intervention. (Dkt. 15, Ex. 9, p. 9). But this contention is too speculative and conclusory to warrant relief, as the state court found. Again, he has not shown that counsel was sleeping or clearly identified the testimony to which counsel should have objected. Nor has he shown that moving the victim's body resulted in crime scene contamination that would have affected the reliability of the State's evidence, or, as he alleged, prevented identification of "the real perpetrator." *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).

Petitioner also argues that counsel should have objected to a leading question on page 366 of the trial transcript, during Henry Ramirez's testimony. (*Id.*, p. 8). Ramirez testified that, after the events, someone asked why he did that, but Petitioner did not respond. (Dkt. 15, Ex. 2, Vol. II, pp. 365-66). The prosecutor asked, "He didn't deny that he's the one that did it?" and Ramirez responded, "No." (*Id.*, p. 366).

The record supports the denial of this claim.[4] Again, Petitioner fails to demonstrate that counsel was asleep, and the record demonstrates that he was not asleep. The question Petitioner identifies is on page 366 of the trial transcript. But, counsel participated in a conference about an ill juror on page 357, announced he had no objection to the introduction of an exhibit on page 361, and made an objection on page 368. (Dkt. 15, Ex. 2, Vol. II, pp. 357, 361, 368). And counsel referred to Ramirez's direct examination testimony when he questioned him on cross examination. (*Id.*, pp. 375-76, 378).

Even assuming that an objection to the question identified by Petitioner would have been sustained, Petitioner has not argued or demonstrated a reasonable probability that the outcome of trial would have been different considering the State's evidence of guilt.[5] This evidence included Oriana Gonzalez's identification of Petitioner as the man who came into her room and pulled her into the living room at gunpoint; Henry Ramirez's testimony that he heard Petitioner participate in planning the robbery, that he was in the car that took Petitioner to and from the scene, and that Petitioner admitted accidentally shooting the victim; and finally, Petitioner's recorded statements admitting his involvement in the robbery. (Dkt. 15, Ex. 2, Vol. I, pp. 227-28, 244; Vol. II, pp. 350-

---

[4] Although the state postconviction court's order did not specifically address this allegation, Petitioner raised the totality of his ineffective assistance claim in his appellate brief. (Dkt. 11, Ex. 13, Initial Brief of Appellant, Ground Two). The state appellate court's decision is an adjudication on the merits that is entitled to deference under § 2254(d). *See Richter*, U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002) ("[T]he summary nature of a state court's decision does not lessen the deference that it is due.").

[5] Although Petitioner presents no evidence in support of his contention that counsel slept during the trial, he nonetheless must establish that counsel's performance, if he slept during the trial. prejudiced him. *See Thomas v. United States*, 305 Fed. Appx. 587, 588-89 (11th Cir. 2008) (Although sleeping, even for a short period of time, is inexcusable, Thomas has failed to establish prejudice. . . Counsel made objections and cross-examined all four witnesses . . . Due to the overwhelming evidence against Thomas from the co-conspirator testimony, and counsel's engagement in the trial during those periods, Thomas has failed to establish a reasonable probability the outcome of the trial would have changed had counsel been awake and alert during Delamain's testimony.) .

51, 359-64, 367-68; Vol. III, pp. 467-70).

Accordingly, Petitioner has not shown that the state court's decision was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.[6] He is therefore not entitled to relief on Ground Nine.

Ground Ten: "Petitioner was deprived of his 6th and 14th amendment of the United States Constitution based on trial counsel failure to object to the improper opinion testimony of Dr. Jacqueline Lee."

The medical examiner, Dr. Jacqueline Lee, was asked whether, considering the size of the gunshot wounds, the victim's injuries were consistent with having been caused by a .45 caliber bullet. (Dkt. 15, Ex. 2, Vol. I, p. 297). She responded that they were. (*Id.*) Petitioner argues that trial counsel was ineffective in not objecting to this response as impermissible opinion testimony. He argued in his postconviction motion that her testimony was "outside her scope of expertise because she is not a ballistic expert." (Dkt. 31, Ex. 20, p. 15). The state court denied this claim:

> [T]he Defendant alleges counsel was ineffective for failing to object to the improper opinion testimony of Dr. Jacqueline Lee. The Defendant alleges Dr. Lee was not qualified to testify regarding the type of bullet that caused the victim's death. The Court finds this claim to be without merit. (*See* trial transcript, pp. 280-82, attached). Consequently, the Defendant is not entitled to relief on this claim.

(Dkt. 15, Ex. 8, p. 6).

---

[6] Petitioner appears to argue in his reply that the state court erred in failing to apply *United States v. Cronic*, 466 U.S. 648 (1984). *Cronic* held that the complete denial of counsel at a critical stage of trial results in a presumption of prejudice. *Id.* at 658-59. Petitioner argues that counsel's alleged sleeping resulted in the total denial of counsel. But he fails to show that the state court's decision was contrary to or an unreasonable application of clearly established federal law. Clearly established federal law encompasses only the holdings of the United States Supreme Court as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Petitioner has not cited a Supreme Court decision holding that *Cronic* applies to his claim. *See, e.g., Williams v. Sec'y, Fla. Dep't of Corr.*, 638 Fed. App'x 965, 969-70 (11th Cir. 2016) (the state court's evaluation of a sleeping attorney claim under *Strickland* was not an unreasonable application of clearly established federal law because no United States Supreme Court decision addressed whether *Cronic* applied to the factual situation alleged); *see Thomas v. United States*, 305 Fed. App'x at 588-89 (11th Cir. 2008) (applying *Strickland* to a claim that counsel fell asleep during trial).

The pages of the trial transcript cited in the state court's order address Dr. Lee's qualifications, background, and experience, as well as her designation as an expert witness in the field of forensic pathology. (Dkt. 15, Ex. 2, Vol. I, pp. 280-82). The court's finding that she was therefore qualified to provide opinion testimony about the cause of the victim's wounds concerns the admissibility of evidence under Florida law, and must be given deference. *See Will*, 278 Fed. App'x at 908. Petitioner has not established a basis on which counsel could have objected to the admissibility of Dr. Lee's testimony, and has not shown that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. He is therefore not entitled to relief on Ground Ten.

Ground Eleven: "Petitioner was deprived of his 6th and 14th amendment of the United States Constitution based on trial counsel failure to object to the introduction of a .45 caliber projectile on the grounds of relevancy."

Ground Twelve: "Petitioner was deprived of his 6th and 14th amendment of the United States Constitution based on trial counsel failure to object to the introduction of ammunition found at codefendant Ramon Luna's house."

Petitioner argues that trial counsel was ineffective in failing to object to the relevancy of a .45 caliber projectile that was introduced into evidence. He alleged in his postconviction motion that the projectile was irrelevant because it was not linked to the victim through DNA. (Dkt. 31, Ex. 20, p. 17). He also argues that trial counsel was ineffective in failing to object to the State's introduction of ammunition recovered from co-defendant Ramon Luna's home. He claims that the State failed to demonstrate any connection between the ammunition and the specific projectile recovered from the scene. The state court denied these claims:

> [T]he Defendant alleges counsel was ineffective for failing to object to the introduction of a .45 caliber projectile on the grounds of relevancy. "Relevant evidence is evidence tending to prove or disprove a material fact." § 90.401, Fla.

Stat. (2006). At trial, Corporal Troy Morgan testified that a projectile was recovered from the crime scene and submitted to the Florida Department of Law Enforcement for testing. James Kwong, a crime laboratory analyst with the Florida Department of Law Enforcement, testified that the projectile recovered was a .45 caliber class jacketed bullet that had been fired from a gun. Dr. Jacqueline Lee testified that the victim's injuries were consistent with a gunshot wound caused by a .45 caliber bullet. The Court finds the .45 caliber projectile was relevant, and the Defendant has failed to demonstrate counsel was ineffective for failing to object to its introduction on that ground. As such, he is not entitled to relief on this claim.

. . .

[T]he Defendant alleges counsel was ineffective for failing to object to the introduction of ammunition found at codefendant Ramon Luna's house. The Defendant alleges there was no proof that the ammunition was linked to the .45 caliber projectile recovered at the crime scene. At trial, Henry Ramirez testified that on March 18, 2006, he saw the Defendant, along with codefendant Ramon Luna and a man named Cesar, being dropped off at Club 21. Approximately five minutes later, the Defendant called and asked to be picked up. When the three men returned to the vehicle, they were carrying luggage and acting nervous. Mr. Ramirez testified that the Defendant later admitted to shooting someone at Club 21 but said it was an accident. Ramon Luna was later arrested, and on April 13, 2006, law enforcement searched his home. During a search of Mr. Luna's home, detectives recovered, among other things, .45 caliber bullets, the same caliber as the projectile recovered from the crime scene. The Court finds the .45 caliber bullets recovered from Ramon Luna's house were admissible. *See Reichmann v. State*, 581 So. 2d 133, 141 (Fla. 1991) (considering as circumstantial evidence bullets recovered from the defendant's motel room that matched the type used to kill the victim). The Defendant has failed to demonstrate counsel performed deficiently by failing to object to their introduction. Therefore, he is not entitled to relief on this claim.

(Dkt. 15, Ex. 8, pp. 6-7) (court's record citations omitted).

The state court's findings that the projectile and ammunition were admissible involve application of state law to which deference must be given. *See Will*, 278 Fed. App'x at 908. Objections to the admissibility of this evidence on relevancy grounds would have been rejected. Counsel cannot be found ineffective in failing to raise meritless objections. *See Brownlee*, 306 F.3d at 1066. Since Petitioner has not shown that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts, he is not

entitled to relief on Grounds Eleven or Twelve.

Ground Fourteen: "Petitioner was deprived of his 6th and 14th amendment of the United States Constitution based on trial counsel failure to object when Henry Ramirez, a planner and participant in the crime, was not charged, even though he had previously been convicted of three felonies."

Petitioner argues that trial counsel was ineffective in failing to object because Henry Ramirez, who Petitioner claims was involved in the offenses, was not charged. The state court denied this claim:

> [T]he Defendant alleges counsel was ineffective for failing to object when Henry Ramirez, a planner and participant in the crime, was not charged, even though he had previously been convicted of three felonies. At trial, Henry Ramirez testified that he was not involved in the incident on March 18, 2006, and he testified that the Defendant and two others planned and executed the robbery. However, the Defendant testified that he was not involved in the robbery and homicide and that he only knew the details of the crime because he overheard Mr. Ramirez talking about it while on the phone. The Defendant alleges Mr. Ramirez and Oriana Gonzalez were lying regarding the Defendant's participation. The Court finds that the Defendant has failed to demonstrate counsel was ineffective for not objecting to the State's failure to charge another person for the offenses. As such, he is not entitled to relief on this claim.
>
> The Defendant also alleges the result of the proceedings would have been different if counsel had pushed the issue of . . . Mr. Ramirez's and other witnesses' reliability. After considering the record, the Court finds that counsel adequately addressed the issue of reliability of the State's witnesses. Therefore, he is not entitled to relief on this claim.

(Dkt. 15, Ex. 8, p. 8) (court's record citations omitted).

Petitioner has not established that the State's failure to charge Henry Ramirez provided any basis for counsel to object to his testimony. Further, as the state court found, counsel did address Ramirez's reliability in his closing argument. He brought up Ramirez's prior felony convictions and urged the jury to consider whether he received preferential treatment because he was present when the robbery was planned and was at the scene, "but somehow he convinced the police that he was

an innocent bystander and not charged." (Dkt. 15, Ex. 2, Vol. III, pp. 597-98). He also argued that

Ramirez and Oriana Gonzalez "set up" Petitioner. (*Id.*, pp. 598-99). Petitioner does not identify how

counsel should have otherwise challenged Ramirez's reliability.

To the extent he argues that counsel was ineffective in failing to adequately challenge "other

witnesses," this claim is too vague to warrant relief because he does not name the witnesses or

identify what counsel should have done differently. *See Tejada*, 941 F.2d at 1559. Accordingly, he

has not shown that the state court's decision involved an unreasonable application of *Strickland* or

an unreasonable determination of the facts. He is not entitled to relief on Ground Fourteen.

Ground Fifteen: "Petitioner was deprived of his 6th and 14th amendment of the United States
Constitution based on trial counsel failed to explained the consequences of testifying at trial."

Petitioner argues that trial counsel was ineffective in failing to explain the consequences if

he testified in his own defense. He argued in his postconviction motion that he was misled to believe

he had the burden of proof, and that counsel did not prepare him to testify. The state court denied

his claim, finding:

> [T]he Defendant alleges counsel never explained the consequences of testifying at
> trial, and he was misled to believe he had the burden of proving his innocence.
> However, the Court finds the Defendant was properly advised of his rights. Prior to
> opening arguments, the Court stated,
>
>> In every trial a defendant has the absolute right to remain silent. At
>> no time is it the duty of the defendant to prove his innocence. From
>> the exercise of a defendant's right to remain silent and not testify at
>> trial a juror is not permitted to draw any inference of guilt. And the
>> fact that the defendant does not testify at trial must not influence your
>> verdict in any manner.
>
> Further, out of the presence of the jury, the Court addressed the Defendant regarding
> whether he would like to testify. The Court explained the consequences of choosing
> to testify. The Court reiterated that the decision whether to testify was up to the
> Defendant, and he may change his mind at any time, even at the last minute. The

Court also explained that if the Defendant chose not to testify, the jury would be instructed that they are not to take that into account while deliberating. The Defendant stated that he was voluntarily choosing to testify. Therefore, the Defendant is not entitled to relief on this claim.

(Dkt. 15, Ex. 8, p. 9) (court's record citations omitted).

The state court allowed him to amend his claim to the extent that he "failed to specify how counsel should have prepared him, and . . . failed to demonstrate how he was prejudiced by the level of preparation he received." (*Id.*). The state court rejected this claim after he submitted an amended motion:

> Defendant alleges counsel was ineffective for failing to inform him that it was in his best interest not to testify and for failing to explain the direct consequences of testifying. He alleges that prejudice is clear "since defendant did nothing but incriminate himself at the stand."
>
> The Court conducted a colloquy with Defendant, explaining the consequences of testifying. The Court clarified that Defendant would be subject to questioning by the State, that he would be required to testify truthfully, and that the jury would be instructed that they are to consider his testimony the same as they would any other witness. Defendant stated that he understood and that he was voluntarily choosing to testify. After considering the record, the Court finds Defendant is not entitled to relief on this claim.

(Dkt. 15, Ex. 10, p. 3) (court's record citation omitted).

As the state court noted, the record demonstrates that the trial court informed Petitioner that he had no duty to prove his innocence, and engaged in a colloquy with him, explaining the process of testifying and informing him that whether to testify was his choice. (Dkt. 15, Ex. 2, Vol. I, pp. 187-88; Vol. II, pp. 430-32). Petitioner told the court that his choice to testify was voluntary. (Dkt. 15, Ex. 2, Vol. II, 432). Accordingly, the record demonstrates that his decision to testify was voluntary and knowingly made, without any deficiency on counsel's part. Although he claimed that counsel "allowed him to be a witness against himself and to incriminate himself," he failed to point

to any specific way in which counsel did not prepare him to testify or any specific portion of his testimony that was affected by an alleged lack of preparation. (Dkt. 15, Ex. 9, pp. 10-11).

Nor did he demonstrate prejudice. He argues that, without his testimony, "the jurors probably would've looked for physical evidence connecting the defendant to the crime scene also (which does not exist) and would've given more weight to the fact only statements were available con[n]ecting and accusing the defendant." (*Id.*, p. 11). But this contention is too speculative to demonstrate prejudice under *Strickland*. And, the State presented significant evidence of his guilt, as addressed in Ground Nine, *supra*. Accordingly, he has not shown that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim, and is therefore not entitled to relief on Ground Fifteen.

Ground Sixteen: "Petitioner was deprived of his 6th and 14th amendment of the United States Constitution based on trial counsel failure to engage in plea negotiations."

Petitioner argues that trial counsel was ineffective in failing to engage in plea negotiations. In his amended postconviction motion, he claimed that counsel should have sought a plea bargain because of the lack of physical evidence connecting him to the offenses. (Dkt. 15, Ex. 9, p. 12). The state court denied this claim, after an evidentiary hearing:

> Defendant alleges counsel was ineffective for failing to engage in plea negotiations. At the evidentiary hearing on the Defendant's motion it became apparent through his testimony that he believed he was entitled to the same, or better, offer as the State made to his co-defendant. The Defendant has used the post-conviction ineffective assistance of counsel process as a vehicle in which to raise this point.
>
> Trial counsel . . . testified that he did in fact engage in plea negotiations with the State, but the State was unwilling to make an offer of any kind to his client . . . [T]he prosecutor who handled the trial in this matter testified that [counsel] did request an offer; however, after considering the evidence in this case, the State refused to extend an offer of any kind to the Defendant because they believed he was "the shooter" and, therefore, more culpable than the co-defendant. The testimony of [counsel] and [the

prosecutor] squarely refuted the Defendant's claim that his attorney failed to engage in plea negotiations. Indeed, the testimony at the evidentiary hearing demonstrated this allegation was frivolous.

After considering the testimony presented at the hearing, the Court finds that counsel was not ineffective, and Defendant is not entitled to relief on this claim.

(Dkt. 15, Ex. 11, pp. 1-2).

Counsel testified at the evidentiary hearing that he discussed a plea with the prosecutor, but that the State "would not agree to anything less than life in prison." (Dkt. 30, Ex. 18, p. 224). He testified that Petitioner's co-defendant secured a plea offer, but Petitioner "was determined to be, by the State, to be the shooter in the case and they would not engage in plea negotiations with Mr. Maldonado." (*Id.*). The prosecutor confirmed that she spoke with defense counsel, but that because the State believed Petitioner was the shooter, and because of the "serious, dangerous" nature of the case, the State decided "Mr. Maldonado would get no offer." (*Id.*, p. 227).

The record therefore supports state court's conclusion that counsel was not ineffective, as he took the actions that Petitioner argues he should have. The state court did not unreasonably apply *Strickland* or unreasonably determine the facts in denying this claim. Petitioner is not entitled to relief on Ground Sixteen.

Ground Seventeen: "Petitioner was deprived of his 6th and 14th amendment of the United States Constitution based on trial counsel failure to object to the manslaughter jury instruction, which included as an element of the offense an intent to kill the victim."

Petitioner argues that trial counsel was ineffective in failing to object to the jury instruction on the lesser-included offense of manslaughter. He contends that the instruction erroneously stated that he had to have an intent to kill the victim. The state court denied this claim:

[T]he Defendant alleges counsel was ineffective for failing to object to the manslaughter jury instruction, which included as an element of the offense an intent

to kill the victim. In order to prove the lesser crime of manslaughter, the State was required to prove that Dennis Villalobos is dead, and the Defendant "intentionally committed an act that caused the death of Dennis Villalobos, or, his death was caused by the culpable negligence of [the Defendant]." The Court finds that, contrary to the Defendant's assertion, the State was not required to prove the Defendant intended to kill Dennis Villalobos, only that he had the intent to act, and that act caused the death of the victim. Consequently, the Defendant has failed to demonstrate that counsel was ineffective, and he is not entitled to relief on this claim.

(Dkt. 15, Ex. 8, pp. 10-11) (court's record citation omitted).

The record supports the state court's conclusion. The manslaughter instruction did not inform the jury that they had to find Petitioner intended the kill the victim. Rather, it only provided that they had to find he intended to commit an act that caused the victim's death. (Dkt. 15, Ex. 2, Vol. III, pp. 621-22). This is consistent with Florida's standard jury instruction on manslaughter, as approved by the Florida Supreme Court after it invalidated a prior version of the instruction that included the defect alleged by Petitioner. *See State v. Montgomery*, 39 So. 3d 252 (Fla. 2010); Fla. Std. Jury Inst. (Crim.) 7.7. Since he has not shown any error in the instruction given to the jury, he fails to show that counsel was ineffective in not objecting. Petitioner has not shown that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claim. He is not entitled to relief on Ground Seventeen.

Accordingly,

1. The petition for writ of habeas corpus (Dkt. 1) is **DENIED**.

2. The Clerk is directed to enter judgment against Petitioner and to close this case.

3. Petitioner is not entitled to a certificate of appealability ("COA"). He does not have the absolute right to appeal. 28 U.S.C. § 2253(c)(1). A COA must first issue. *Id.* He is entitled to a COA only if he demonstrates that reasonable jurists would find debatable whether the § 2254

petition stated "a valid claim of the denial of a constitutional right." *Id.*; *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). To make a substantial showing of the denial of a constitutional right, he "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,'" *Tennard* v. *Dretke,* 542 U.S. 274, 282 (2004) (quoting *Slack,* 529 U.S. at 484), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El* v. *Cockrell,* 537 U.S. 322, 335-36 (2003) *(quoting Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)).

Petitioner cannot make the required showing. He cannot demonstrate that reasonable jurists would debate whether the petition stated a valid claim of the denial of a constitutional right. Finally, because he is not entitled to a COA, he is not entitled to appeal *in forma pauperis.*

**DONE and ORDERED** this _21st_ day of November, 2017.

**JAMES D. WHITTEMORE**
**United States District Judge**

*Pro se* Petitioner, Counsel of Record